IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MELINDA DOBSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:22-CV-03190 |
| ) | |
| FORD MOTOR COMPANY, ) | Magistrate Judge Jeffrey T. Gilbert |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

This case is before the Court on Defendant's Motion for Judgment on the Pleadings [ECF No. 29] ("Motion"). For the reasons discussed below, the Court grants in part and denies in part Defendant's Motion.

## I. BACKGROUND

Plaintiff Melinda Dobson ("Plaintiff" or "Dobson") is a Black woman who was employed by Defendant Ford Motor Company ("Ford" or "Defendant") from 1995 through July 2022. Complaint [ECF No. 1] at ¶¶ 5, 8. Plaintiff alleges she was "a competent and dedicated worker" who was "on track for promotion to Quality Manager or a Final Chassis Manager." [*Id.*] at ¶¶ 9-10.

**A) September 2019 Lawsuit and Settlement Agreement**

In September 2019, Plaintiff filed a lawsuit against Defendant alleging racial and gender discrimination and retaliation. [*Id.*] at ¶ 11. The parties entered into a confidential Settlement Agreement on April 1, 2021 ("Settlement Agreement"). [*Id.*] at ¶ 12. Plaintiff alleges the settlement included Defendant's agreement "to resolve

1

any disputes that could exist between it and Plaintiff" and "that any claims Ford had against Dobson would not survive the settlement agreement." [*Id.*] She alleges she relied on "Ford's agreement and promises" in dismissing her 2019 lawsuit. [*Id.*] at ¶ 25.

### B) February 4, 2022 Suspension

Following the settlement, Plaintiff continued her employment with Ford as Government Regulations Coordinator. [*Id.*] at ¶ 13. Plaintiff alleges that as a result of her leadership, Ford's Chicago Assembly Plant passed an ISO audit in Oct. 2021. [*Id.*] at ¶ 14. Plaintiff also received a "Top Achiever" ranking in her January 2022 performance review. [*Id.*] at ¶ 15; Answer [ECF No. 18] at ¶ 15. As of the beginning of 2022, Plaintiff would have been eligible for full retirement (as opposed to partial retirement) from Ford in three years, when she reached thirty years of service. [ECF No. 1] at ¶ 20.

On February 4, 2022, Defendant suspended Plaintiff without pay for four weeks based on "events occurring in the year 2019 and 2020" where Defendant "determined that she 'violated Company policy'" (Plaintiff refers to this as the "2019 Dispute"). [ECF No. 1] at ¶¶ 16-17. Defendant "admits it suspended Dobson for violating its Standards of Corporate Conduct / Unprofessional Behavior for multiple complaints against Dobson reported from late 2019 through 2020 regarding Dobson's interactions with hourly and salaried coworkers." [ECF No. 18] at ¶ 17. Plaintiff claims this suspension was in breach of the Settlement Agreement where "Ford contracted away its right to hold the 2019 Dispute against Plaintiff." [ECF No.1] at ¶ 28]. Defendant entered a notice of discipline related to her suspension in her

personnel file which remains active on her record for two years. [*Id.*] at ¶ 18. Plaintiff alleges this notice prevents her promotion to certain Ford LL5 management positions (and Defendant admits "discipline may impact promotional decisions"). [ECF No. 18] at ¶ 19. As a result of the "mental anguish" Plaintiff suffered from Ford's suspension and other wrongful acts, as well as "Ford's interference with her prospects for promotion," she retired effective July 1, 2022, three years earlier than she had planned. [ECF No. 1] at ¶¶ 21-23.

Counts I and III of Plaintiff's Complaint allege discrimination based on Plaintiff's race and gender under 42 U.S.C. § 1981 and Title VII. Plaintiff's discrimination claims are based on Ford's breach of the Settlement Agreement and its "promises" to Plaintiff. [ECF No. 1] at ¶¶ 31-32, 35, 44-47, 49-50; *see also* [*id.*] at ¶¶ 26, 29. Plaintiff alleges Defendant breached the Settlement Agreement because she is a Black female, any other reason is pretext, and Ford does not similarly "breach the agreements made with its White employees nor hold disputes against them that have been waived." [*Id.*] at ¶¶ 35, 49. The discrimination counts also allege that Plaintiff's February 2022 suspension was "without good cause and for no other reason than because she is a Black female." [*Id.*] at ¶¶ 33, 48. Plaintiff claims Defendant "maintained an impermissibly dual system of discipline in that it imposed more severe disciplinary sanctions on Black employees for minor deviations from the work rules that [sic] it has on other non-Black employees" and its "reprimand procedures and investigations were more harshly carried out against Plaintiff than other White or male employees." [*Id.*] at ¶¶ 4, 27.

3

Counts II and IV of Plaintiff's Complaint allege retaliation for Plaintiff's protected activity of filing the 2019 discrimination lawsuit under 42 U.S.C. § 1981 and Title VII. The retaliation counts identify as adverse employment actions (1) Ford's breach of the Settlement Agreement [*id.*] at ¶¶ 40, 56, and (2) the February 2022 suspension. [*Id.*] at ¶¶ 39-41, 53-55. Plaintiff also alleges that in August 2021, she "warned Ford of the consequence for carrying out this wrongful act" of suspending her for the 2019 and 2020 conduct. [*Id.*] at ¶ 24. As a result of Defendant's alleged wrongful conduct, Plaintiff generally claims she lost four weeks of pay and benefits, promotion eligibility, and "was forced to retire early due to Ford cutting her off from future opportunities." [*Id.*] at ¶¶ 36-38, 42, 51, 57.[1]

Count V, for breach of the Settlement Agreement, alleges Defendant promised "any rights or claims it might have against Plaintiff would not survive the settlement agreement" and Defendant breached the Settlement Agreement by suspending Plaintiff in February 2022 based on 2019 and 2020 conduct, thus "failing to relieve her of any liability for anything she did wrong to Ford before the date of the settlement agreement." [*Id.*] at ¶¶ 58, 62. Plaintiff further alleges Defendant violated an "implied covenant of good faith" by abusing its discretion in suspending Plaintiff and making misleading representations. [*Id.*] at ¶¶ 63-67. Plaintiff also claims

---

[1] In Count I (racial discrimination under 42 U.S.C. § 1981), Plaintiff alleges additional details about her lost opportunities, including a salary increase for "passing ISO-Audit," future wages, transfer eligibility to another plant, and "[c]orporate wide accolades her Audit results [sic] and seen as the Leader (SME- Subject Matter Expert) on ISO Preparedness." [*Id.*] at ¶ 38.

Defendant breached the Settlement Agreement by suspending her "without good cause" and "solely because she is a Black woman." [*Id.*] at ¶ 68.

In its Motion, Defendant argues that Count V, for breach of the Settlement Agreement, fails under Illinois law[2] because Defendant did not agree to release or waive any disciplinary action against Plaintiff based on pre-settlement conduct. With respect to Counts I – IV, Defendant argues that these counts fail as a matter of law because they rely on the alleged breach of the Settlement Agreement as the underlying discriminatory and retaliatory conduct.

## II. LEGAL STANDARD

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is governed by the same standard as a motion to dismiss under Rule 12(b)(6). *Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017). In considering the Motion, the Court must view all the facts in the light most favorable to the non-moving party and must take all uncontested allegations to which the parties had an opportunity to respond as true. *Flora v. Home Fed. Sav. & Loan Ass'n,* 685 F.2d 209, 211 (7th Cir. 1982); *National Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357 (7th Cir. 1987). The motion must be based "only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky,* 675 F.3d at 745; *see also Northern Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend,* 163 F.3d

---

[2] The parties agree that Illinois law applies to interpretation of the Settlement Agreement, which contains an Illinois choice of law provision. [ECF No. 29] at 4; [ECF No. 35] at 2; Settlement Agreement [ECF No. 31] at 6].

449 (7th Cir. 1998). "[T]he court 'may take into consideration documents incorporated by reference to the pleadings'. . ." *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017) (quoting *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991)). "[T]his is a narrow exception aimed at cases interpreting, for example, a contract." *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998).

A motion for judgment on the pleadings will be granted when it is "beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Hayes v. City of Chicago,* 670 F.3d 810, 813 (7th Cir. 2012) (quoting *Thomas v. Guardsmark, Inc.,* 381 F.3d 701, 704 (7th Cir. 2004)). The plaintiff's complaint must state a claim for relief that is plausible on its face. *See, e.g., St. John v. Cach, LLC*, 822 F.3d 388, 389 (7th Cir. 2016). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. ANALYSIS

**A) Count V (Breach of contract and implied covenants under Illinois law)**

Plaintiff did not attach the Settlement Agreement to the Complaint. In support of its Motion, however, Defendant filed a copy of the Settlement Agreement. [ECF No. 31]. As discussed above, the Settlement Agreement is referenced throughout Plaintiff's Complaint and is central to her claims. Plaintiff does not object to the Court considering the Settlement Agreement and relies on its terms in her Response. Response [ECF No. 35]. Accordingly, the Court considers the Settlement Agreement

in deciding this Motion. *See Milwaukee Police Ass'n*, 863 F.3d at 640; *Levenstein*, 164 F.3d at 347.

The Settlement Agreement is, of course, a contract. On a motion for judgment on the pleadings or a motion to dismiss, "the meaning of the contract 'must be determined from the words or language used, and a court cannot place a construction on the contract which is contrary to the plain and obvious meaning of the language.'" *INEOS Polymers Inc. v. BASF Catalysts*, 553 F.3d 491, 498 (7th Cir. 2009) (citing *McWane, Inc. v. Crow Chicago Indus., Inc.*, 224 F.3d 582, 584 (7th Cir. 2000) (quoting *Johnstowne Centre P'ship v. Chin*, 99 Ill.2d 284, 76 Ill.Dec. 80, 458 N.E.2d 480, 481 (1984))). If the court "determines that the contract is unambiguous, it may determine its meaning as a matter of law." *INEOS Polymers Inc.*, 553 F.3d at 498. An "unambiguous contract controls over contrary allegations in the plaintiff's complaint." *Id.*

Count V of the Complaint alleges Defendant breached the Settlement Agreement by suspending Plaintiff for conduct predating the settlement. *See, e.g.*, [ECF No. 1] at ¶¶ 12, 28, 58, 62. Although Plaintiff claims Defendant agreed to waive or release any such claims it might have relating to pre-settlement conduct, Plaintiff does not identify any express language or provisions in the Settlement Agreement to support that interpretation of the contract. [ECF No. 1] at ¶ 12. In her Response, Plaintiff argues Defendant's contractual obligation stems from the fifth Whereas clause in the Agreement (which says "the parties now wish to resolve any and all disputes that exist or could exist between them", [ECF No. 29] at 6 (quoting

Settlement Agreement)) read in conjunction with Paragraph 16, a cooperation clause which Plaintiff argues "obligated Ford to do every act needed to carry out the 'terms and intent of this Agreement'." [ECF No. 35] at 4.

As an initial matter, Plaintiff does not dispute that the Whereas clause is a recital, not a contract term. [*Id.*] at 3-4. "Illinois courts have held that such 'whereas' clauses . . . are merely explanations of the circumstances surrounding the execution of the contract" and "are not binding obligations unless referred to in the operative portion of the contract." *See McMahon v. Hines*, 697 N.E.2d 1199, 1204 (1998). As Defendant notes, there is no mutual release in the Agreement: only Plaintiff agreed to waive any claims against Defendant arising before her execution of the Settlement Agreement in exchange for Defendant's monetary payment. [ECF No. 29] at 5-6. Thus, the Whereas clause, standing alone, does not create an enforceable contractual obligation as to Plaintiff's pre-settlement conduct.[3]

Plaintiff does not identify any other operative terms in the Settlement Agreement in which Defendant expressly agreed to waive or release any rights it may have had regarding pre-settlement conduct by Plaintiff. Instead, Plaintiff argues Paragraph 16 of the Settlement Agreement, when read together with the fifth Whereas clause, spells out or comprises Defendant's agreement to waive or release

---

[3] Plaintiff also alleges that Defendant breached the Settlement Agreement when it "suspended her without good cause and cut her off from valuable employment benefits solely because she is a Black woman" [ECF No. 1] at ¶ 68, but she does not identify any contractual obligation requiring Defendant to have "good cause" to discipline Plaintiff. Whether Plaintiff has properly stated claims that her suspension was discriminatory in other counts of her Complaint is addressed below.

any claims or rights it had with respect to Plaintiff as of the date of the Settlement Agreement. [ECF No. 35] at 2-3 ("a contract paragraph together with a recital can establish an enforceable promise," citing *Horton v. City of Chicago*, No. 13-CV-6865, 2018 WL 6505398, at *7–8 (N.D. Ill. Dec. 11, 2018)). Paragraph 16 provides that the parties "agree to cooperate fully and execute any and all necessary supplementary documents and to take all additional actions which may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement, including documents related to the dismissal" of the September 2019 lawsuit. Reply [ECF No. 36] at 4 (quoting Settlement Agreement). This Paragraph does not include any waiver or release by Defendant of its rights or claims relating to pre-settlement conduct by Plaintiff. Plaintiff argues, however, that a substantive obligation can be derived from the Whereas clause in the recitals as an expression of the parties' "intent" to resolve all disputes between them as of the date of the Settlement Agreement.[4]

Plaintiff's interpretation of the Agreement runs afoul of the principles governing the limited consideration of recital clauses in construing contractual obligations. While "'[r]esort will be had to the recitals of a contract if necessary to determine the intention of the parties and of the operative provisions of the agreement,'" *Horton* "recognizes that recitals cannot be used to impose new

---

[4] As Defendant notes, the cooperation referenced in Paragraph 16 refers to efforts to effectuate substantive obligations set forth elsewhere in the Agreement, such as Plaintiff's promise to dismiss the pending lawsuit in Paragraph 2 of the Agreement. [ECF No. 36] at 4. By contrast, there is no substantive term in the Settlement Agreement that speaks to Defendant's supposed obligation to waive or release any rights or claims concerning Plaintiff that could be implicated by the cooperation obligations in Paragraph 16.

obligations that are not set forth in the body of the contract." *Id.*, at *7–8 (citing and discussing *Regnery v. Meyers*, 287 Ill. App. 3d 354, 360, 679 N.E.2d 74, 78 (1997), *as modified on denial of reh'g* (1st Dist. Apr. 22, 1997) rejecting the use of "a recital, which stated that plaintiffs agreed to resolve all claims" to create a release obligation "where the words "I release" or "we release" were not found anywhere in the body of the contract"). That is particularly apropos here, where the Settlement Agreement contains an express release clause that binds Plaintiff to release her claims in exchange for a settlement payment but omits any such language as to Defendant.

The cases cited by Plaintiff provide no support for her interpretation of the Settlement Agreement. In *Horton*, the court considered language in the recital clause to determine the time period covered by an express indemnification provision in the contract, emphasizing that Illinois courts have "rejected a party's attempt to use a recital to establish a substantive legal obligation" as opposed to where a recital is used "to clarify the duration or scope of a legal obligation that was already clearly set forth in the body of the contract." *Id.*, 2018 WL 6505398, at *7–8. Similarly, in *Cress v. Recreation Servs., Inc.*, 341 Ill. App. 3d 149, 170, 795 N.E.2d 817, 838–39 (2003), the court considered a recital expressing the defendant's "wish to retain plaintiff until 'his retirement at age sixty-five'" to determine the duration of the defendant's obligation to maintain the plaintiff's salary at a certain level as stated in an operative term of the contract. In *Platinum Supplemental Ins., Inc. v. Guarantee Tr. Life Ins. Co.*, 989 F.3d 556, 567 (7th Cir. 2021) and *Farmers Auto. Ins. Ass'n v. Kraemer*, 367 Ill. App. 3d 1071, 1073–74, 857 N.E.2d 691, 693–94 (2006), the courts addressed when

the scope of an express release clause can be modified by prefatory recitals; neither case addressed the reverse circumstance present here, where Plaintiff essentially contends the substantive release obligation can be created by a recital.

Plaintiff also argues extrinsic facts should be considered to determine the meaning of the Settlement Agreement. Plaintiff acknowledges "'[t]he meaning of a written contract is ordinarily a question of law and not one of fact'," but argues "'when construction of the agreement is dependent not only upon the meaning of the words employed but also upon extrinsic facts and circumstances or upon the construction which the parties themselves have placed upon the contract, and the facts are controverted, the inference to be drawn is for the jury.'" [ECF No. 35] at 4 (quoting *Chicago Daily News v. Kohler*, 360 Ill. 351, 363–64, 196 N.E. 445, 451 (1935)). The court in *Chicago Daily News*, however, addressed circumstances inapplicable here. In that case, the parties' post-agreement conduct was used to inform the court's understanding of the contract. Plaintiff does not rely on post-settlement conduct here in that way. Rather, she suggests Paragraph 16 is ambiguous because it does not define the additional actions Defendant agreed to take to "give full force and effect to the terms and intent" of agreement. [ECF No. 31] at 5. Plaintiff argues the Court can consider extrinsic evidence about the parties' pre-settlement negotiations for this reason.

"Whether a contract is ambiguous is a question of law." *Cent. Illinois Light Co. v. Home Ins. Co.*, 213 Ill. 2d 141, 154, 821 N.E.2d 206, 214 (2004). Here, as explained above, there is no ambiguity: the Settlement Agreement does not include any term

11

by which Defendant can be said to have waived or released its rights or claims as to Plaintiff's pre-settlement conduct that Paragraph 16 of the Agreement then can be used to animate. Nor does Plaintiff explain how extrinsic evidence about Defendant's knowledge of complaints about Plaintiff's conduct in 2019 and 2020 during the negotiation of the settlement could change the meaning of Paragraph 16 so as to impose a substantive waiver obligation on Defendant. *See* [ECF No. 35] at 4; [ECF No. 18] at ¶ 17. Although Plaintiff contends "the parties are construing the intent of paragraph 16 differently" [ECF No. 35] at 4, Paragraph 16 "is not rendered ambiguous simply because the parties do not agree on its meaning." *See Johnstowne Centre Partnership v. Chin*, 458 N.E.2d 480, 481 (Ill. 1984).

Plaintiff also fails to acknowledge the integration clause in the Settlement Agreement. *See* ECF No. 29] at 5 (describing Paragraph 11). "[W]here parties formally include an integration clause in their contract, they are explicitly manifesting their intention to protect themselves against misinterpretations which might arise from extrinsic evidence." *Air Safety, Inc. v. Tchrs. Realty Corp.*, 185 Ill. 2d 457, 464, 706 N.E.2d 882, 885 (1999). "The integration clause makes clear that the negotiations leading to the written contract *are not* the agreement. Accordingly, considering extrinsic evidence of prior negotiations to create an 'extrinsic ambiguity' where *both* parties *explicitly* agree that such evidence will *not* be considered ignores the express intentions of the parties and renders integration clauses null." *See id.*, 185 Ill. 2d at 463–65, 706 N.E.2d at 884–86. The integration clause in the Settlement Agreement bars consideration of any extrinsic evidence of "promises" or

12

representations made during the parties' negotiations which did not result in the inclusion of specific terms in the Agreement. For this reason, the Court may not consider extrinsic evidence regarding the parties' negotiations to inform its interpretation of the Settlement Agreement. *See* [ECF No. 35] at 1-2, 4; [ECF No. 1] at ¶ 67.

Finally, Plaintiff claims that the Settlement Agreement contained "an implied covenant of good faith that obligates a party to conduct itself honestly and deal with the other party to the agreement with integrity and fairness." [ECF No. 1] at ¶ 63. "The obligation of good faith and fair dealing is used as an aid in construing a contract under Illinois law, but does not create an independent cause of action." *McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 755 (7th Cir. 2013). It "is essentially used to determine the intent of the parties where a contract is susceptible to two conflicting constructions" typically in circumstances "where one party to a contract is given broad discretion in performance"; in such instances, "[t]he covenant of good faith requires that a party vested with contractual discretion exercise that discretion reasonably, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the parties." *N. Tr. Co. v. VIII S. Michigan Assocs.*, 276 Ill. App. 3d 355, 367, 657 N.E.2d 1095, 1104 (1995). "When a contract is clear and unambiguous, a court will not add terms in order to reach a result more equitable to one of the parties. Although a court can declare an implied covenant to exist, that is only where there is in the express contract of the parties a satisfactory basis which makes it necessary to imply certain duties and obligations in order to effect the

13

purposes of the parties making the contract." *Mid-W. Energy Consultants, Inc. v. Covenant Home, Inc.*, 352 Ill. App. 3d 160, 165–66, 815 N.E.2d 911, 915–16 (Ill. App. 1st Dist. 2004) (internal citations omitted).

As described above, Plaintiff does not identify any contractual language obligating Defendant to waive disciplinary action as to Plaintiff's pre-settlement conduct. For this reason, Plaintiff's claim for breach of the implied covenant of good faith also necessarily fails.[5] *See Bernacchi v. First Chicago Ins. Co.*, 52 F.4th 324, 330–31 (7th Cir. 2022) (contract did not impose an obligation on defendant to adjust insurance claims within a certain timeframe, and plaintiff "cannot use the covenant to rewrite the contract to do so," citing *Mid-W. Energy Consultants, Inc.*, 352 Ill. App. 3d at 165–66, 815 N.E.2d at 915–16). The implied covenant of good faith does not "permit a party to enforce an obligation not present in the contract." *McArdle*, 705 F.3d at 755.

Plaintiff also suggests Defendant's conduct during settlement negotiations is a breach of the implied covenant of good faith.[6] [ECF No. 1] at ¶¶ 64-66 (Plaintiff

---

[5] Defendant also cites *Moore v. United States Dep't of State*, 351 F. Supp. 3d 76, 95 (D.D.C. 2019) for the proposition that "an employer's breach of a settlement agreement for discriminatory or retaliatory reasons 'is not enforceable under Title VII as an adverse personnel action because it is appropriately addressed under principles of contract law.'" [ECF No. 29] at 9 n.1. In light of the Court's decision that Defendant did not breach the Settlement Agreement, it need not decide whether such a breach could be an actionable adverse employment action under Title VII. In addition and in any event, Plaintiff's allegation that she was suspended for four-weeks without pay sufficiently alleges an adverse employment action under Title VII. *See, e.g.*, *Lesiv v. Illinois Cent. R.R. Co.*, 39 F.4th 903, 913 (7th Cir. 2022) ("It is well-established that unpaid suspensions can constitute materially adverse actions for retaliation claims.").

[6] Plaintiff points to the sixth Whereas clause, which she describes as including a "representation that [Defendant] negotiated in good faith" in support of the claim for breach

14

"reasonably expected that Ford would never hold the 2019 Dispute against her" and Defendant breached the implied covenant "[b]y virtue of . . . its misleading representations"). These allegations fail to state a claim because "there is no implied duty of good faith and fair dealing during contract negotiations." *Cobb-Alvarez v. Union Pac. Corp.*, 962 F. Supp. 1049, 1055 (N.D. Ill. 1997) (citing *A/S Apothekernes Laboratorium for Specialpraeparater v. I.M.C. Chem. Grp., Inc.*, 873 F.2d 155, 160 n.2 (7th Cir. 1989)). In addition, as noted above, this Court may not consider extrinsic evidence regarding the parties' negotiations given the integration clause in the contract and the unambiguous omission of any language stating that Defendant was waiving or releasing any claims it had against Plaintiff.

For all these reasons, the Court grants Defendant's Motion for judgment on the pleadings as to Count V of Plaintiff's Complaint.

### B) Counts I - IV (Discrimination and Retaliation under 42 U.S.C. § 1981 and Title VII)

Defendant argues that Counts I – IV fail as a matter of law because these claims "rely on Ford's alleged breach of the Settlement Agreement as underlying wrongful conduct to support claims of race and gender discrimination and retaliation." [ECF No. 29] at 9. Defendant reasons because there is no breach, these claims "necessarily fail as a matter of law." [*Id.*]

Defendant's argument that Counts I – IV rely entirely on a breach of the Settlement Agreement is an overly narrow reading of the Complaint. The Complaint

---

of the implied covenant. [ECF No. 35] at 5. As discussed above, this recital language does not create any operative contractual obligations.

identifies Plaintiff's February 2022 suspension as independently discriminatory and retaliatory conduct, not only as an alleged breach of the Settlement Agreement. *See also* [ECF No. 35] at 5 (identifying Defendant's suspension of Plaintiff without good cause and for no other reason that she is a Black female as an alleged violation of Title VII). Defendant does not address Plaintiff's allegations that Ford "maintained an impermissibly dual system of discipline" and "suspended Plaintiff without good cause and for no other reason than because she is a Black female." [ECF No. 1] at ¶¶ 4, 33 and 48. Instead, Defendant conflates Plaintiff's allegation that discipline was "more harshly carried out" against her as compared to other White or male employees as merely a restatement of other allegations related to the Settlement Agreement. [ECF No. 29] at 9. Read in the light most favorable to Plaintiff, however, that allegation is distinct from Plaintiff's other claims related to Defendant's alleged promises and agreements embodied in the Settlement Agreement. [ECF No. 35] at 6 (citing Complaint [ECF No. 1] at ¶¶ 26-27).

Defendant similarly does not address Plaintiff's allegations in Counts II and IV that the February 2022 suspension was in retaliation for Plaintiff's protected activity related to the September 2019 lawsuit. [ECF No. 1] at ¶¶ 40, 41, 54-56. Nor does Defendant appear to dispute that the 2022 suspension is an adverse employment action that occurred after execution of the Settlement Agreement. Rather, Defendant argues that it is a misnomer to refer to a "2019 Dispute," noting that Plaintiff was not disciplined until early 2022. [ECF No. 36] at 5. That argument gets Defendant nothing with respect to the retaliation claim. Plaintiff alleges Defendant retaliated

16

against her for protected conduct that led to and resulted in the Settlement Agreement, which was executed in 2021, before Defendant disciplined Plaintiff in 2022. Therefore, for all these reasons, the Court denies Defendant's Motion for judgment on the pleadings as to Counts I – IV.

### C) Leave to Amend the Complaint

In her Response, Plaintiff requests leave to amend her Complaint "to set forth further factual allegations showing the existence of a contractual obligation as set forth in the agreement." [ECF No. 35] at 6. While "Rule 15(a) provides that a court 'should freely give leave [to amend] when justice so requires'" a court "may deny leave to amend if amendment would be futile." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 529 (7th Cir. 2022) (internal citations omitted). The decision to grant or deny a motion for leave to file an amended pleading is a matter within the sound discretion of the district court. *Brunt v. Serv. Employees Int'l Union,* 424 F.3d 542, 553 (7th Cir. 2005). Defendant opposes Plaintiff's request for leave to amend. [ECF No. 36] at 7-9.

Plaintiff has not identified facts that she would add to her Complaint to show "the existence of a contractual obligation" in the Settlement Agreement. [ECF No. 35] at 6. As the Settlement Agreement on its face does not contain terms requiring Defendant to waive its right to take disciplinary action against Plaintiff based on her conduct predating the settlement, it is difficult to see how Plaintiff might cure the defects in her Complaint the Court has identified in this Memorandum Opinion and Order. *See Bernacchi*, 52 F.4th at 330–31 (affirming denial of leave to amend to add claim for breach of implied covenant of good faith where amendment would be futile

17

because contract did not impose an obligation on defendant to adjust insurance claims within a certain timeframe). On the other hand, because leave to amend is to be given feely under the Federal Rules of Civil Procedure, and the Court cannot anticipate what Plaintiff may have in mind to save her contract claim from being dismissed with prejudice, Plaintiff's request for leave to amend the Complaint as it pertains to "the existence of a contractual obligation" is granted. Plaintiff is granted until June 1, 2023, to file an amended complaint as to the contract claim alleged in Count V of the Complaint. If no amended complaint is filed by then, then Count V of the Complaint will be deemed dismissed with prejudice.

In addition, although the Court is denying Defendant's Motion as to Counts I through IV of her Complaint, Plaintiff also is given leave to amend those Counts. Defendant argues correctly that Plaintiff's allegations regarding Defendant's breach of the Settlement Agreement (which this Court has held fail as a matter of law) are interwoven with Plaintiff's other allegations of discrimination and retaliation set forth in Counts I – IV. While the Court has identified allegations in Counts I through IV that are sufficient to state civil rights and employment discrimination claims that are independent of Plaintiff's breach of contract claim, Plaintiff may be able to state those claims more clearly in an amended complaint. That exercise also may help to clarify the scope of permissible discovery on Counts I through IV. Therefore, in consideration of the permissive standard of Rule 15(a), Plaintiff also is granted leave to amend her Complaint with respect to Counts I – IV to clarify the alleged wrongful

18

conduct at issue in those Counts in light of this Memorandum Opinion and Order if she wishes to do so.

## IV.   CONCLUSION

For all these reasons, Defendant Ford's Motion for Judgment on the Pleadings [ECF No. 28] is granted in part as to Count V without prejudice and denied in part as to Counts I – IV also without prejudice. Plaintiff is given 30 days to file an amended complaint as to the contract claim alleged in Count V of the Complaint. If no amended complaint is filed by then, then Count V of the Complaint will be deemed dismissed with prejudice. Plaintiff is also given leave to file an amended complaint as to Counts I - IV consistent with the Court's Memorandum Opinion and Order if she chooses to do so.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: May 1, 2023