## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MELINDA DOBSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:22-CV-03190 |
| | ) | |
| FORD MOTOR COMPANY, | ) | Magistrate Judge Jeffrey T. Gilbert |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on Defendant Ford Motor Company's Motion to Dismiss Count V of Plaintiff's Amended Complaint. [ECF No. 41]. For the reasons discussed below, the Court grants Defendant's Motion and also grants Plaintiff Melinda Dobson's ("Plaintiff's") request for leave to file another amended complaint which should be Plaintiff's final attempt to articulate her claims in this case.

## I.    BACKGROUND

The Court assumes familiarity with, and incorporates by reference, the underlying background facts set forth in its previous Memorandum Opinion and Order in this case issued on May 1, 2023. [ECF No. 39]. In that ruling, the Court denied Defendant's motion for judgment on the pleadings as to Plaintiff's claims of race and gender discrimination and retaliation for Plaintiff's protected activity of filing a prior discrimination lawsuit in 2019. [*Id.*] The Court also granted Defendant's motion as to Count V, Plaintiff's claim that Defendant breached an April 1, 2021 settlement agreement related to the 2019 lawsuit ("Settlement Agreement") by

subsequently suspending her for alleged workplace misconduct that occurred before that Settlement Agreement was entered into, but the Court allowed Plaintiff leave to amend her complaint. [*Id.*]

Specifically, the Court found, in the context of Plaintiff's breach of contract claim, that the Settlement Agreement was unambiguous and did not contain any language obligating Defendant to release or waive disciplinary action as to Plaintiff's pre-settlement conduct. [*Id.*] at 6-15. The Court explained it could not consider extrinsic evidence about the settlement negotiations in the context of Plaintiff's breach of contract claim because the Agreement was unambiguous and contained an integration clause. [*Id.*] at 11-13. Finally, given the absence of any express contractual obligation requiring Defendant to waive claims as to Plaintiff's pre-settlement conduct, the Court rejected Plaintiff's claim for breach of the implied duty of good faith and fair dealing. [*Id.*] at 13-15. Because leave to amend should be freely granted under Federal Rule of Civil Procedure 15, however, the Court allowed Plaintiff to file an amended complaint, including to potentially replead Count V. [*Id.*] at 17-19.

Plaintiff filed an Amended Complaint on June 1, 2023, reasserting Count V and alleging additional facts. [ECF No. 40] ("Amended Complaint"). Plaintiff alleges that during her settlement negotiations with Defendant, Defendant agreed that any existing claims it may have against Plaintiff would not survive the Settlement Agreement. [*Id.*] at ¶¶ 30, 37. Plaintiff says a draft settlement agreement contained a clause that said "[r]ights or claims that the Company may have against Plaintiff

also survive," but Defendant agreed to strike that clause from the final written agreement when Plaintiff objected to it. [*Id.*] at ¶¶ 30; *see also* Exhibit C [ECF No. 40-3]. Plaintiff claims the parties reached a "good faith understanding" to the effect that no rights or claims Defendant had against Plaintiff survived the Settlement Agreement, "yet through error the agreement reduced to writing was not the actual agreement." [*Id.*] at ¶ 19. Plaintiff also alleges she did not negotiate an express release of preexisting claims because she did not know she was the target of an internal investigation and that Defendant failed to disclose and/or intentionally concealed that it had an additional, live claim against Plaintiff that was not being released in the Settlement Agreement. [*Id.*] at ¶¶ 18, 34-35; *see* [*id.*] at ¶ 81. Plaintiff also attached a post-Settlement Agreement letter from her attorney addressed to an attorney who represented Defendant during the prior settlement negotiations asserting that Defendant had represented that it intended the settlement to resolve all disputes between the parties. Exhibit B [ECF No. 40-2].

Plaintiff alleges that certain recitals in the Settlement Agreement, namely that "the parties wished to resolve all disputes that could exist between them" and "agreed to deal in good faith," demonstrate Defendant's intent to relinquish its right to bring or enforce pre-existing claims against Plaintiff. Interpreting the language any differently, according to Plaintiff, "otherwise would amount to a mutual mistake or error of the parties or some other contract formation error warranting reformation." [*Id.*] at ¶ 33; *see also* [*id.*] at ¶ 74. In addition, Plaintiff alleges Defendant's conduct

amounted to a waiver of its right to enforce any pre-existing claims against Plaintiff. [*Id.*] at ¶¶ 31-32.

Plaintiff mentions or alludes to concepts such as reformation and waiver in her Amended Complaint, however, that Complaint still speaks in terms of breach of contract, and Defendant attacks it as such. In Count V of the Amended Complaint, Plaintiff alleges Defendant breached the Settlement Agreement by suspending Plaintiff for pre-settlement conduct and forcing her into retirement, and she asserts this was also a breach of the implied covenant of good faith and fair dealing. [*Id.*] at ¶¶ 72-85. Plaintiff alleges she would not have settled her prior discrimination claims without also resolving any other potentially live claims Defendant may have had against her. [*Id.*] at ¶ 85. In effect, Plaintiff contends the Settlement Agreement should be reformed to encompass the parties' intent in entering into that Agreement, and Plaintiff should be permitted to enforce the contract as reformed so that Defendant is barred from charging her with alleged misconduct that predated the parties' entering into the Settlement Agreement. Plaintiff also seems to argue Defendant is estopped to raise against Plaintiff her earlier alleged workplace misconduc based upon Defendant's conduct before and after the Settlement Agreement was executed. Plaintiff's Response [ECF No. 45] at 3, 5.

Defendant's current Motion asserts that Plaintiff's amended breach of contract claim should be dismissed because the new allegations improperly rely on extrinsic evidence regarding the settlement negotiations. Defendant's Memorandum of Law in Support of its Motion to Dismiss Count V of Plaintiff's Amended Complaint [ECF No.

42] ("Defendant's Brief") at 2-3. Defendant argues, as it did before, that under Illinois law, where a contract is unambiguous its meaning must be determined from the language of the agreement without consideration of parol evidence. [*Id.*] at 6. Defendant again points to the integration clause in the Settlement Agreement which provides "[t]his Agreement contains the entire agreement between and among the parties" and says in light of this clause, the "four corners rule" applies and no extrinsic evidence, including as to the negotiations, may be considered. [*Id.*] Defendant contends Plaintiff's implied covenant of good faith and fair dealing claim similarly fails because there was no underlying contractual obligation precluding Defendant from disciplining Plaintiff for pre-settlement conduct. [*Id.*] at 9-10. Defendant says the Settlement Agreement does not include any language barring Defendant from disciplining Plaintiff for any conduct, regardless of when it took place, and therefore Count V should be dismissed. [*Id.*]

In her Response, Plaintiff argues the "merger rule" and integration clause do not bar consideration of extrinsic evidence where mutual mistake or fraud existed in the formation of the contract. Plaintiff's Response [ECF No. 45] at 1-3. Plaintiff also asserts Defendant waived its right to discipline Plaintiff for pre-settlement conduct in light of the promises Defendant made during the negotiations, and that Defendant is estopped to raise those prior workplace misconduct issues after it entered into the Settlement Agreement. [*Id.*] at 3, 4, 5. Plaintiff asks the Court to deny the Motion or "allow Plaintiff to amend her complaint to allege collateral estoppel or request a reformation." [*Id.*] at 6. With this request, Plaintiff essentially acknowledges that her

claim really may be for breach of a reformed contract rather than for breach of the Settlement Agreement she entered into with Defendant, and that the claim is based on legal principles of waiver or estoppel rather than for straight breach of contract. Defendant, however, does not engage substantively with Plaintiff's new arguments, instead reiterating the arguments upon which it prevailed in its last motion to dismiss [ECF No. 39].

## II.   LEGAL STANDARD

A motion to dismiss under Federal Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. FED. R. CIV. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.3d 1510, 1520 (7th Cir. 1990). In ruling on a Rule 12(b)(6) motion, the court must accept as true all well-pleaded facts in the plaintiff's complaint and draw all reasonable inferences from those facts in the plaintiff's favor. *Anchor Bank, FSB v. Hofer*, 549 F.3d 610, 614 (7th Cir. 2011). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 8(a)(2) (a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A claim is plausible where a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At base, a plaintiff must allege "enough details

about the subject-matter of the case to present a story that holds together." *Id.*; *Twombly*, 550 U.S. at 555.

In the context of a Rule 12(b)(6) motion to dismiss, the Court "also consider[s] any documents attached to and integral to the complaint as part of the [plaintiff's] allegations." *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 878 (7th Cir. 2022). In addition, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Although Plaintiff does not attach the Settlement Agreement to the Amended Complaint, Defendant attached a copy of the Agreement to its prior Motion for Judgment on the Pleadings [ECF No. 31] and references that filing in its current Motion. [ECF No. 42] at 5. Thus, as it did with respect to Defendant's prior motion, the Court will consider the Settlement Agreement in deciding this Motion. [ECF No. 39] at 6-7.

## III.   ANALYSIS

### A. The Court may consider Plaintiff's allegations of mutual mistake or fraud in the settlement negotiations on a claim for reformation and breach of a reformed Settlement Agreement.

Plaintiff asserts the Settlement Agreement should be reformed to reflect the parties' mutual mistake in omitting the parties' good faith agreement that Defendant would waive its right to pursue claims related to Plaintiff's pre-settlement conduct. Plaintiff also alleges Defendant fraudulently concealed a live or existing claim it had and that it could assert against her arising from her pre-settlement conduct. [ECF No. 40] at ¶¶ 18-19, 30-37; [ECF No. 45] at 1-3, 5-6. Plaintiff alleges these facts

provide grounds for reformation of the Settlement Agreement. [ECF No. 40] at ¶¶ 18-19, 30-37. In addition, if the existing Amended Complaint is not sufficient to allege such a claim, Plaintiff requests leave to further amend her complaint to state such a claim. [ECF No. 45] at 6.

Different from her response to Defendant's prior motion, Plaintiff does not argue that the Settlement Agreement as currently written includes a release from Defendant that covers the claims Plaintiff wants to pursue, nor does Plaintiff argue any provision of the Settlement Agreement is ambiguous. Instead, Plaintiff contends that because she seeks reformation of the Settlement Agreement based on mutual mistake or fraud, the integration clause does not bar consideration of extrinsic evidence about the parties' settlement negotiations to determine the terms of the parties' actual agreement. [ECF No. 45] at 2-3. Plaintiff wants to reform the Settlement Agreement and hold Defendant liable for breach of the reformed agreement, not to enforce the contract as written.

In support, Plaintiff cites, *inter alia*, *Czarobski v. Lata*, 227 Ill. 2d 364, 371–72 (2008). [*Id.*] at 2-3. The Court notes that Plaintiff confusingly relies on language from that decision (as well as several other cases) addressing the merger rule, a doctrine that, as Defendant notes, is specific to real estate contracts. *See* [*id.*] at 2-3. Nevertheless, as the Illinois Supreme Court observed in *Czarobski*, it "has long held that mutual mistake, or mistake of one side and fraud on the other, may give rise to a claim for reformation of a written contract." 227 Ill. 2d at 3371-7269 (citing *Fisher v. State Bank of Annawan,* 163 Ill.2d 177, 182 (1994), *Suburban Bank of Hoffman–*

*Schaumburg v. Bousis,* 144 Ill.2d 51, 58–59 (1991), and *Harley v. Magnolia Petroleum Co.,* 378 Ill. 19, 28 (1941)). Defendant fails to address this legal argument head on. Rather, Defendant asserts "Plaintiff confuses integration clauses with the merger doctrine, which is inapplicable here," [ECF No. 46] at 3, but Defendant ignores the real issue: whether Plaintiff has stated a claim for reformation or can do so and, correspondingly, for breach of a reformed Settlement Agreement, and whether extrinsic evidence can be considered in support of such a claim.

Under Illinois law (which the parties agree applies, *see* [ECF No. 39] at n.2), "[a] party can obtain a contract reformation by showing through clear and convincing evidence that: (1) there has been a meeting of the minds resulting in an actual agreement between the parties; (2) the parties agreed to reduce their agreement to writing; and (3) at the time the agreement was reduced to writing and executed, some agreed upon provision was omitted or one not agreed upon was inserted either through mutual mistake or through mistake by one party and fraud by the other." *Indiana Ins. Co. v. Pana Cmty. Unit Sch. Dist. No. 8*, 314 F.3d 895, 904 (7th Cir. 2002) (citing *Alliance Syndicate v. Parsec, Inc.*, 318 Ill.App.3d 590 (2000)); *see also Fisher,* 163 Ill.2d at 182. Given these elements, extrinsic evidence likely will be central to establishing a reformation claim. For that reason, "[i]t is well settled that the parol evidence rule is no bar to the admission of evidence on the question of mutual mistake, and this is so even when the instrument to be reformed is clear and unambiguous on its face. Thus, parol evidence may be used to show the real agreement between the parties when a mistake has been made and the evidence is

for the purpose of making the contract conform to the original intent of the parties."
*In re Marriage of Johnson*, 237 Ill. App. 3d 381, 391 (Ill. App. 4th Dist. 1992). *See*,
*e.g.*, *CitiMortgage, Inc. v. Parille*, 2016 IL App (2d) 150286, ¶ 30 (Ill. App. 2d Dist.
2016) ("Because the thrust of such a claim is that the instrument's language does not
accurately reflect the parties' agreement, parol evidence may be introduced on the
issue of the parties' intent, 'even when the instrument to be reformed is clear and
unambiguous on its face.'") (internal citations omitted); *Orchard Park Plaza, LLC v.
Chubb Custom Ins. Co.*, 2018 IL App (1st) 172526-U, ¶ 21 (Ill. App. 1st Dist. 2018)
("When a mutual mistake is alleged, parol evidence is admissible to demonstrate the
parties' true intent and understanding", citing *In re Marriage of Johnson*, 237 Ill.
App. 3d at 391). Therefore, even if the Settlement Agreement is not ambiguous as
written, as the Court previously found, the unambiguous nature of the Settlement
Agreement does not preclude consideration of extrinsic evidence for purposes of a
reformation claim.

Turning to the effect of the integration clause in the context of a claim for
reformation, an integration clause also may not bar consideration of extrinsic
evidence of contract negotiations in a case such as this. In *Typenex Co-Inv., LLC v.
Solar Wind Energy Tower, Inc.*, 123 F. Supp. 3d 1017, 1020–21 (N.D. Ill. 2015), the
parties had negotiated a Term Sheet for a financing deal that promised a prepayment
schedule to be completed within 12 months of the loan. The final agreement executed
by the parties, however, did not include that same prepayment schedule. *Id.*, 123 F.
Supp. 3d at 1021-22. In the resulting litigation about the alleged failure to comply

with the prepayment schedule, the lender alleged counterclaims for breach of the Term Sheet as well as the final agreement, and also stated fraud-based claims. *Id.* at 1022. Applying Illinois law on a Rule 12(b)(6) motion, the court dismissed the contract-based claims, reasoning the Term Sheet was not part of the final agreement and the integration clause in the final agreement barred consideration of extrinsic evidence of the parties' negotiations. The court noted the lender's argument that "if the Term Sheet is not part of the final agreement, the documents that the parties signed . . . fail to reflect the agreement they actually reached" but reasoned that "is a claim for reformation, not breach" and therefore "[f]or now, it suffices to say that the integration clause requires that Count II, as presently drafted, be dismissed." *Id.*, at 1024. The court, however, then allowed the lender leave to amend its counterclaims to state a claim for reformation based on the alleged extrinsic evidence about the parties' negotiations. *Id.* at 1024.

Similarly, in *Avery Dennison Corp. v. Naimo*, the court also allowed a plaintiff to amend a breach of contract claim to state a claim for reformation. 2006 WL 3343762, at *4 (N.D. Ill. Nov. 16, 2006). The case involved a dispute between an employer and a former employee. The parties entered into a Separation Agreement following the employee's termination. *Id.* The Separation Agreement contained an integration clause stating that it was "the only and complete agreement" between the parties and that it "supersedes all previous agreements," including the employee's prior Employment Agreement. *Id.* at *2-3. The court granted a motion to dismiss the claim that the employee had breached a non-compete clause in the Employment

Agreement, reasoning that the unambiguous terms of the Separation Agreement (which did not include a non-compete clause) and the integration clause superseded the non-compete clause in the Employment Agreement. *Id.* The court nevertheless allowed the plaintiff to amend its complaint to state a claim of mutual mistake, an exception to the parol evidence rule, so as to "reform the contract to reflect what 'both parties understood'" regarding the continuing effect of the non-compete provision in the prior Employment Agreement. *Id.* at *3-4. Notwithstanding that "plaintiff's reformation theory has appeared for the first time in its response to defendant's motion," the court allowed the plaintiff leave to amend to "seek[] to reform the Separation Agreement and enforce that agreement as reformed." *Id.* at *4.[1]

Defendant asserts "[t]his Court "already ruled that the integration clause in the Settlement Agreement [at ¶ 11] bars consideration of any extrinsic evidence of 'promises' or representations made during the parties' negotiations which did not result in the inclusion of specific terms in the Agreement,'" and argues the Court should not revisit its prior ruling under the law of the case doctrine. [ECF No. 46] at

---

[1] Courts applying the contract law of other states have reached similar conclusions. *Cf. Powermat Techs., Ltd. v. Belkin Int'l Inc.*, 2020 WL 2892385, at *8–11 (S.D.N.Y. Apr. 2, 2020) (applying New York law: "A 'general merger clause' does not preclude a reformation claim or the introduction of parol evidence to support that claim"); *Gulf Bay Cap., Inc. v. Textron Fin. Corp.*, 2015 WL 12829623, at *3 (M.D. Fla. Apr. 13, 2015) ("Florida courts have held that merger or integration clauses do not preclude reformation of a contract"); *Citibank, N.A. v. Morgan Stanley & Co. Int'l, PLC*, 724 F. Supp. 2d 407, 416–17 (S.D.N.Y. 2010) (applying New York law, denying motion to dismiss reformation counterclaim based on extrinsic evidence, including emails from contract negotiations, despite unambiguous language in contract and an integration clause); *Regency Realty Grp., Inc. v. Michaels Stores, Inc.*, 2013 WL 3936399, at *8 (E.D. Mich. July 30, 2013) (applying Michigan law: "Parol evidence may be considered in deciding whether reformation is appropriate under this standard, even where, as here, the contract is unambiguous and contains a merger clause.").

1-2 (quoting [ECF No. 39] at 12-13); *see also* [ECF No. 42] at 7. This mischaracterizes the scope of the Court's prior ruling. The parties did not address a reformation claim in the earlier pleading or in the briefing on the previous motion, and the Court did not address whether there were any circumstances (beyond the asserted ambiguities at issue in the context of that motion) that might warrant consideration of extrinsic evidence. As discussed above, the integration clause in the Settlement Agreement (paragraph 11) does not bar Plaintiff's reformation claim as a matter of law.[2]

Defendant, as noted above, does not directly address whether extrinsic evidence of mutual mistake or fraud in contract negotiations may be considered in the context of a reformation claim. Instead, Defendant argues that Plaintiff's claim of mutual mistake fails because she is not seeking to *avoid* her contractual obligations but rather seeks to *enforce* the Settlement Agreement. [ECF No. 46] at 3-4. That is not how the Court interprets Plaintiff's Amended Complaint. Plaintiff is not seeking to enforce the Settlement Agreement as written; she is seeking to enforce the Agreement as reformed. As discussed above, in *Avery Dennison*, the court reasoned that a plaintiff may seek to enforce a contract as reformed, and Defendant cites no authority stating otherwise. Indeed, under Illinois law, "[c]ourts have the power to

---

[2] Although Plaintiff asserts Paragraph 11 of the Settlement Agreement "omits the language of integration," [ECF No. 45] at 1, an integration clause does not need to include specific wording: "logically equivalent language—'[t]his policy contains all of the agreements between [certain parties]'—is an integration clause." *GFRB, LLC v. Worthy Promotional Prod., LLC*, 624 F. Supp. 3d 959, 965–66 (N.D. Ill. 2022) (quoting *West Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co.*, 794 F.3d 666, 674 (7th Cir. 2015). As Defendant notes, courts have found language comparable to that in Paragraph 11 to constitute an enforceable integration clause. [ECF No. 46] at 2 (citing cases). Nevertheless, as discussed above, for purposes of a claim for reformation, an integration clause does not bar the Court from considering extrinsic evidence of the parties' negotiations.

insert provisions in a written contract which the evidence clearly and convincingly shows were omitted through fraud, accident or mistake so as to make it express the intention of the parties" and "the need for parol evidence" does not "bar such an action." *St. Joseph Data Serv., Inc. v. Thomas Jefferson Life Ins. Co. of Am.*, 73 Ill. App. 3d 935, 943 (Ill. App. 4th Dist. 1979) (addressing adequacy of allegations in complaint seeking "reformation of the written agreement and damages for breach of the reformed agreement").

Defendant also says Plaintiff's theory of mutual mistake fails because she has alleged a legal mistake and not a mistake of "fact," citing *Hartford Cas. Ins. Co. v. Moore*, 731 F. Supp. 2d 800, 807 (C.D. Ill. 2010). [ECF No. 46] at 4. This does not appear to be as dispositive a distinction as Defendant contends. *See Moore*, 731 F. Supp. 2d at 809 (on a motion for summary judgment, acknowledging Illinois law may allow "a court to sometimes exercise its equitable power to reform a contract based on a mutual mistake of law"). Other Illinois decisions have rejected "that reformation is available only for mutual mistakes of fact, not law" observing "the distinction between mistakes of fact and mistakes of law has been eroded in recent years." *See CitiMortgage, Inc.*, 2016 IL App (2d) 150286, ¶ 31 (dismissal of reformation claim was error under Illinois law because "in appropriate circumstances, equity may allow the reformation of a contract even when the mistake is one of law," citing *Harbaugh v. Hausman,* 210 Ill.App.3d 715, 721–22 (Ill. App. 4th Dist. 1991) and *In re Estate of Hurst,* 329 Ill.App.3d 326, 336 (Ill. App. 4th Dist. 2002)). Furthermore, Plaintiff's claim that the parties made a mutual mistake in omitting language that

memorialized their good faith agreement that Defendant would waive its right to pursue claims related to Plaintiff's pre-settlement conduct may come down to a factual mistake rather than a mistake of law. Accordingly, the Court will not reject Plaintiff's allegations of mistake as insufficient to state a claim for reformation at the pleading stage when all inferences must be drawn in Plaintiff's favor.

For these reasons, the Court can consider Plaintiff's allegations of extrinsic evidence as to the parties' understanding about whether Defendant had waived all claims against Plaintiff arising from any disputes pre-dating the settlement in support of a claim to reform the Settlement Agreement and to enforce the reformed agreement.

### B. Plaintiff can amend her complaint to state claims for reformation of the Settlement Agreement, breach of the reformed Settlement Agreement, and waiver or estoppel.

The Court is also not persuaded that allowing Plaintiff to file a second amended complaint here would be futile, as Defendant contends. In her Amended Complaint, Plaintiff alleges a mutual mistake in the formation of the Settlement Agreement. [ECF No. 40] at ¶¶ 32-33; *see also* [*id.*] at ¶ 19. Plaintiff also alleges a factual basis for fraud during the negotiations, alleging she "had no reason to negotiate an express release from [Defendant]" because Defendant had failed to disclose or "intentionally concealed" the existence of any other live or existing claim against Plaintiff. [*Id.*] at ¶¶ 18, 34-37, 81, 85. The Court acknowledges that Plaintiff has already been given leave to amend her complaint once before, but it does not view the circumstances here to be analogous to those in Defendant's cited cases, where additional amendment would have been futile as a matter of law. *See* [ECF No. 46] at 8. To that end, the

Court observes that Plaintiff's failure to enumerate a claim for reformation as one of the alleged Counts in her Amended Complaint is not fatal, particularly given her express reference to a reformation theory and facts allegedly supporting such a claim in briefing Defendant's Motion. "The Seventh Circuit has long held that '[a] complaint need not identify legal theories' and that 'specifying an incorrect theory is not a fatal error.'" *Typenex Co-Inv., LLC*, 123 F. Supp. 3d at 1028 (quoting *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011)); *see Ryan v. Ill. Dep't of Children & Family Servs.*, 185 F.3d 751, 764 (7th Cir.1999) ("a plaintiff ... cannot plead herself out of court by citing to the wrong legal theory or failing to cite any theory at all").

While the facts alleged in the Amended Complaint may be sufficient to state a claim for reformation and breach of the reformed Settlement Agreement, Plaintiff herself has asked the Court for leave "to amend her complaint to allege collateral estoppel or request a reformation." [ECF No. 45] at 6. Moreover, the Court notes that Federal Rule of Civil Procedure Rule 9(b), which provides "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," may apply to a reformation claim. *See* Fed. R. Civ. P. 9(b); *see Pittsfield Dev., LLC v. Travelers Indem. Co.*, 2019 WL 3287841, at *2-5 (N.D. Ill. July 22, 2019) (noting "[t]he parties seemingly agree that Rule 9(b) applies to Plaintiffs' reformation claim"). Thus, it will benefit the parties and the Court, and help frame the issues that are appropriate for discovery, for the pleadings to be more specific and clearer with respect to the claims Plaintiff is alleging in this case. *See Typenex Co-Inv., LLC*, 123 F. Supp. 3d at 1028–29 (noting defendant "likely could allege sufficient facts to make

out a reformation claim (if it has not done so already)" but allowing further amendment to lay "the proper groundwork," noting "[defendant] should make clear whether it is proceeding under a mutual mistake theory, a unilateral-mistake-plus-fraud theory, or both, and should plead facts that satisfy the other elements for reformation under Illinois law"); *Avery Dennison Corp.*, 2006 WL 3343762, at *3–4 (granting plaintiff leave to amend to state reformation and breach of contract claims, notwithstanding that theory of mutual mistake "appeared for the first time in its response to defendant's motion"). In consideration of the permissive standard for amendment set forth in Federal Rule of Civil Procedure 15(a), the Court will allow Plaintiff to further amend her complaint.

As noted above, Plaintiff also seeks leave to plead a claim for "collateral estoppel," which the Court interprets as arising from the same facts and circumstances as the waiver claim alleged in the Amended Complaint, as argued in the briefing. *See* [ECF No 40] at ¶¶ 31-32 (alleging Defendant's "waiver" of claims predating the settlement); [ECF No. 45] at 4-5 (arguing Defendant's conduct during the settlement negotiations constituted waiver of the right to act on pre-settlement conduct); [ECF No. 46] at 5-6 (describing Plaintiff's theory as "a form of common law waiver"). *See also* Plaintiff's Response [ECF No. 45] at 3 and 5 ("Ford should be estopped from claiming otherwise"). While Defendant contends the waiver allegations in the Amended Complaint fail to state a breach of contract claim, [ECF No. 46] at 5, incorrectly labeling a legal theory is not fatal in a pleading. *See Rabe*, 636 F.3d at 872. Plaintiff argues waiver and estoppel based on Defendant's alleged conduct before

and after the settlement including by continuing to employ Plaintiff in positions of responsibility and praising her work performance. [ECF No. 45] at 5. It appears the facts alleged in the Amended Complaint may be sufficient to plausibly state a waiver claim. *Cf. Sexton v. Smith*, 112 Ill. 2d 187, 194-96 (1986) (finding plaintiff waived his security interest in cattle and machinery in favor of bank's priority by his conduct during negotiations for the sale of plaintiff's farm, notwithstanding that plaintiff did not sign the financing statement and security agreement executed between the bank and buyers of the farm). That may also be the case for an estoppel claim, which was not addressed in depth in the parties' briefing. For this reason, the Court will permit Plaintiff to amend her pleading to also state claims arising from waiver and estoppel if she can do so.

Finally, the Court recognizes that it is allowing Plaintiff a third opportunity to set forth a coherent legal theory related to the Settlement Agreement in her operative legal pleading. In the Court's view, that is justified under the circumstances of this case. Plaintiff arguably articulated coherent reformation, waiver, and estoppel theories in her last pleading attempt and in the briefing on the present Motion, but the Court would prefer those claims to be set forth more clearly in an amended pleading (as Plaintiff also suggests she be given leave to do). This, however, should be the last time Plaintiff amends her complaint before the case proceeds to the next stages of the litigation and trial process, including discovery (which the Court notes is currently stayed but it intends to allow to proceed following the filing of an amended pleading). Further, if Defendant is going to attack Plaintiff's next amended

pleading under Federal Rule of Civil Procedure 12, it should do so fully cognizant of the Court's rulings and its interpretation of Plaintiff's allegations and legal theories, construed as required in the light most favorable to Plaintiff at this stage of the proceedings, in this Memorandum Opinion and Order. Whether Plaintiff can succeed on any of those theories is a different question not ripe for decision at the pleading stage.

## CONCLUSION

For all these reasons, Defendant Ford's Motion to Dismiss Count V [ECF No. 41] is granted without prejudice. Plaintiff is given 30 days to file an amended complaint. If no amended complaint is filed by then, then Count V of the Complaint will be deemed dismissed with prejudice.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: October 30, 2023